Filed 4/21/14  P. v. Martinez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOE PAUL MARTINEZ,<br><br>    Defendant and Appellant. | H039273<br>(Santa Clara County<br>Super. Ct. No. C1085573) |

**INTRODUCTION**

Defendant Joe Paul Martinez pleaded guilty to assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)[1]; count 1), attempted premeditated murder of an officer (§§ 664, subd. (f), 187; count 2), possession for sale of methamphetamine (Health & Saf. Code, § 11378; count 3), and possession of a firearm by a felon (former § 12021, subd. (a)(1); count 4).  As to count 1, defendant admitted the allegation that he personally inflicted great bodily injury (§ 12022.7, subd. (a)), and as to count 2, he admitted the allegation that he personally discharged a firearm (§ 12022.53, subd. (c)).  Defendant also admitted the allegation that he had been convicted of two prior strikes (§§ 667, subds. (b)-(i) & 1170.12), as well as a prior serious felony (§ 667, subd. (a)).  Defendant was sentenced to 95 years in prison.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

On appeal, defendant challenges various fines and fees that the trial court imposed during sentencing. He claims that the court failed to properly consider his ability to pay a $10,000 restitution fine (§ 1202.4, subd. (b)), a $150 drug program fee (Health & Saf. Code, § 11372.7) and penalty assessments, and a $129.75 booking fee (Gov. Code, §§ 29550, subd. (a), 29550.1), and that there was no substantial evidence of his ability to pay these fines and fees. He also contends the court miscalculated the penalty assessments on the drug program fee and the laboratory fee (Health & Saf. Code, § 11372.7). For reasons that we will explain, we will modify the judgment with respect to the penalty assessments and affirm the judgment as modified.

## BACKGROUND

### A. *Facts Underlying the Charged Offenses*[2]

#### 1. Count 1

On July 13, 2010, defendant went to his father's house and approached his father. Defendant had a "crazy stare" and did not say anything. His father asked defendant what his problem was. Defendant responded that his father was his problem, and he started punching and kicking his father. Defendant then stabbed his father six times.

#### 2. Counts 2-4

On October 21, 2010, police officers found defendant sleeping in a parked car. The officers parked their patrol vehicles so as to surround defendant's car. The officers ordered defendant to put his hands up and surrender. Defendant refused to raise both hands, and he attempted to drive away. One of the officers, Officer Macias, approached defendant's car from the passenger side. Defendant turned his head, saw Officer Macias, and fired a gun at the officer. A piece of glass flew towards Officer Macias and impaled his left cheek. The other officers then opened fire at defendant. Defendant was shot

---

[2] The facts are taken from the transcripts of the preliminary examinations and the probation report.

2

multiple times. The officers later recovered a handgun in defendant's vehicle and methamphetamine on defendant's person.

## B. Charges and Pleas

The District Attorney filed an amended consolidated information charging defendant with assault with a deadly weapon (§ 245, subd. (a)(1); count 1), attempted premeditated murder of an officer (§§ 664, subd. (f), 187; count 2), possession for sale of methamphetamine (Health & Saf. Code, § 11378; count 3), and possession of a firearm by a felon (former § 12021, subd. (a)(1); count 4). The information further alleged that as to count 1, defendant inflicted great bodily injury (§ 12022.7, subd. (a)) and that as to count 2, defendant personally discharged a firearm (§ 12022.53, subd. (c)). Additionally, the information alleged that defendant had been convicted of two felony offenses that qualified as strikes (§§ 667, subds. (b)-(i), 1170.12) as well as a prior serious felony allegation (§ 667, subd. (a)).

Defendant pled guilty to all charges and admitted the great bodily injury (§ 12022.7, subd. (a)) and firearm (§ 12022.53, subd. (c)) allegations. He also admitted the strike allegations (§§ 667, subds. (b)-(i), 1170.12) and the prior serious felony allegation (§ 667, subd. (a)).

## C. Probation Report

The probation report was prepared on November 30, 2012. Defendant was 37 years old at the time. Defendant discussed his health history with the probation officer. Defendant suffered from and took medication for asthma, high blood pressure, and high cholesterol. He also suffered health problems after being shot during the commission of the underlying offense. Defendant was blind in his left eye, had a bone replacement in his left hand, lost the pinky finger on his right hand, and had nerve damage on his right wrist. He took medication for his nerve damage. Defendant told the probation officer that he had three bullets still lodged in his body. Defendant denied having any mental health conditions.

3

The probation report noted that defendant had been convicted of two felonies and four misdemeanors in the past. Defendant committed his felony offenses 14 years prior to the present offense, and he served 11 years 4 months in prison for those convictions. The report mentioned that defendant had a "very limited work history, and has spent most of his adult life incarcerated."

The probation report also included defendant's social data. Defendant had last been employed by Daylight Foods, working as a driver from 2007 to 2009 for $15 per hour. He had obtained his GED in 2006 in New Folsom Prison. He also completed a "Brakes & Alignment" program in 1993.

The probation officer's recommendations included imposition of several fines and fees. The recommendations included: (1) "A Restitution Fine of $10,000.00 be imposed under the formula permitted by . . . [s]ection 1202.4[, subdivision] (b)(2) and [defendant's] ability to pay," (2) a "$129.75 Criminal Justice Administration fee to the City of San Jose be imposed pursuant to Government Code [sections] 29550, 29550.1 and 29550.2," (3) a "$50.00 Criminal Laboratory Analysis Fee, plus penalty assessment[s], be imposed pursuant to [s]ection 11372.5 of the Health and Safety Code," and (4) a "$150.00 Drug Program Fee, plus penalty assessment[s], be imposed pursuant to [s]ection 11372.7 of the Health and Safety Code."

### D. Sentencing

On January 25, 2013, the trial court held a sentencing hearing. The court denied defendant's motion to dismiss the strike allegation (see *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497) and it sentenced defendant to prison for a term of 95 years. The court also ordered defendant to pay various fines and fees.

The trial court ordered defendant to pay a restitution fine of $10,000 "under the formula permitted by . . . [s]ection 1202.4[, subdivision (b)(2)] as well as [defendant's] ability to pay." The trial court also imposed but suspended an additional $10,000 fine (§ 1202.45). Defense counsel commented that defendant was indigent and, "He would

4

have no ability to pay." The trial court replied, "I understand what you're saying[.] I am looking at work history and also the fact once at state prison he will be able to work there. So I am making a finding based on that."

The trial court ordered defendant to pay a court security fee (§ 1465.8) of $160 and a criminal conviction assessment (Gov. Code, § 70373) of $120. Additionally, the court imposed a $129.75 criminal justice administration fee (Gov. Code, §§ 29550, subd. (a), 29550.1, 29550.2), finding that defendant "has the ability to pay" that fee. The court imposed a $50 criminal laboratory analysis fee (Health & Saf. Code § 11372.5) "plus penalty assessment[s]" of $150. The court also imposed a $150 drug program fee (Health & Saf. Code § 11372.7) "plus penalty assessment[s]" of $450. As to the drug program fee, the court commented, "Again, I find he has the ability to make that payment."

Lastly, the court noted, "In view of all that has transpired even though your attorney's fees are worth thousands and thousands of dollars I am not going to assess attorney's fees at this time."

At the conclusion of the sentencing hearing, defense counsel stated, "We are objecting to the imposition of any fines and fees because [defendant] is indigent. He also states and I believe to be true base[d] on the medical records in discovery provided in this case that he would be unable to work in prison. He would not be able to gain any wages or get a job because of the disabilities that he has." The trial court responded that it would "leave [its] order as set."

## DISCUSSION

### A. Restitution Fine

Defendant contends that the trial court erred by imposing a $10,000 restitution fine (§ 1202.4, subd. (b)). Defendant acknowledges that the court found that he had the ability to pay the restitution fine, but he claims that the court failed to consider certain

factors:  his physical condition and his limited work history.  Moreover, he contends there was no substantial evidence supporting an ability to pay finding.

### 1.  Legal Background

The version of section 1202.4, subdivision (b) applicable at the time of defendant's offenses provided that "[i]n every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record."  (Former § 1202.4, subd. (b) amended by Stats. 2009, ch. 454, § 1, p. 2483, repealed by Stats. 2011, ch. 358, § 1, p. 3759.)

Former section 1202.4, subdivision (b)(1) provided that the "restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony, and shall not be less than one hundred dollars ($100), and not more than one thousand dollars ($1,000), if the person is convicted of a misdemeanor."  Former section 1202.4, subdivision (b)(2) provided that in "setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."  Former section 1202.4, subdivision (c) provided in pertinent part that a "defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine.  Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the two hundred-dollar ($200) or one hundred-dollar ($100) minimum."

Former section 1202.4, subdivision (d) provided that in "setting the amount of the fine pursuant to subdivision (b) in excess of the two hundred-dollar ($200) or one hundred-dollar ($100) minimum, the court shall consider any relevant factors including, but not limited to, *the defendant's inability to pay*, the seriousness and gravity of the

6

offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered any losses as a result of the crime, and the number of victims involved in the crime. Those losses may include pecuniary losses to the victim or his or her dependents as well as intangible losses, such as psychological harm caused by the crime. *Consideration of a defendant's inability to pay may include his or her future earning capacity. A defendant shall bear the burden of demonstrating his or her inability to pay. Express findings by the court as to the factors bearing on the amount of the fine shall not be required. A separate hearing for the fine shall not be required.*" (Italics added.)

### 2. Analysis

Contrary to defendant's assertion, the trial court considered his medical condition and his work history when it set the restitution fine at $10,000. After defense counsel argued that defendant was indigent and had no ability to pay, the court found that based on his "work history and also the fact once at state prison he will be able to work there," defendant had the ability to pay. Indeed, state prison inmates who perform assigned work are compensated for it. (See § 2700.) The court was thus entitled to consider future prison wages as a basis for imposing the restitution fine. (See *People v. Frye* (1994) 21 Cal.App.4th 1483, 1486-1487 (*Frye*).)

Furthermore, although defendant argued that he would be unable to work in prison due to his disabilities, the trial court took into consideration defendant's medical condition, which was detailed in the probation report. The court was also able to observe his physical condition at the sentencing hearing before imposing the restitution fine. (See *People v. Staley* (1992) 10 Cal.App.4th 782, 786 (*Staley*).) Thus, the court was in the best position to evaluate defendant's physical condition in relation to his ability to work and earn prison wages. (*Ibid.*) Moreover, we note that state prisons consider a prisoner's disabilities in evaluating his or her ability to work. (See Cal. Code Regs. tit. 15, §§ 3040, 3043.5, subds. (d) & (e).) State prisons must also accommodate a disabled inmate in

7

compliance with the American With Disabilities Act (ADA). (*Armstrong v. Wilson* (9th Cir. 1997) 124 F.3d 1019, 1025; Cal. Code Regs. tit. 15, § 3085.) Therefore, the court was entitled to consider defendant's future prison wages in spite of his medical condition.

Additionally, the trial court was apprised, through the probation report, of defendant's social, work, and criminal history prior to setting the restitution fine. The court was able to consider factors such as defendant's previous employment as a driver, his completion of a "Brakes and Alignment" training program and the attainment of his GED. Absent evidence to the contrary, this court presumes that the trial court followed the law and performed its duty (see Evid. Code, § 664) to consider the appropriate factors in determining defendant's ability to pay.

In sum, the record shows that the trial court considered the appropriate factors in determining defendant's ability to pay the restitution fine. Furthermore, based on the same factors discussed above, substantial evidence supports the court's ability to pay finding.

## B. Drug Program Fee

Next, defendant contends that the trial court erred by imposing a $150 drug program fee (Health & Saf. Code § 11372.7) and penalty assessments. Although defendant acknowledges that the court found defendant had the ability to pay the drug program fee, he again argues that the court did not consider his medical condition and his limited work history. Defendant argues that there was no substantial evidence supporting an ability to pay finding.

### 1. Legal Background

Health and Safety Code section 11372.7 provides: "(a) Except as otherwise provided in subdivision (b) or (e), each person who is convicted of a violation of this chapter shall pay a drug program fee in an amount not to exceed one hundred fifty dollars ($150) for each separate offense. The court shall increase the total fine, if necessary, to

8

include this increment, which shall be in addition to any other penalty prescribed by law. [¶] (b) The court shall determine whether or not the person who is convicted of a violation of this chapter has the ability to pay a drug program fee. If the court determines that the person has the ability to pay, the court may set the amount to be paid and order the person to pay that sum to the county in a manner that the court believes is reasonable and compatible with the person's financial ability. In its determination of whether a person has the ability to pay, the court shall take into account the amount of any fine imposed upon that person and any amount that person has been ordered to pay in restitution. If the court determines that the person does not have the ability to pay a drug program fee, the person shall not be required to pay a drug program fee."

The drug program fee is thus mandatory, provided the trial court determines the defendant has the ability to pay the fee. (Health & Saf. Code, § 11372.7, subd. (b).) In determining a defendant's ability to pay, the court is permitted to consider various criteria, including a defendant's future discernible financial position. (*Frye*, *supra*, 21 Cal.App.4th at pp. 1486-1487.)

### 2. Analysis

Defendant compares this case to *People v. Corrales* (2013) 213 Cal.App.4th 696 where the appellate court reversed a drug program fee and penalties because there was no substantial evidence of the defendant's ability to pay. (*Id.* at p. 702.) In that case, the probation report contained "no evidence of defendant's assets" and indicated that the defendant was an "unemployed ex-convict." (*Ibid.*) The appellate court reversed the drug program fee and penalties, and on remand, it ordered the trial court to determine if the defendant had the ability to pay the fee in light of his total financial obligations. (*Ibid.*)

In contrast, here, the trial court made an express finding that defendant had an ability to pay the drug program fee and penalty assessments based on his work history and his ability to earn wages once in prison. The record shows that the court was aware

9

of and considered various factors, including defendant's medical, social, and criminal history, before imposing the drug program fee and the penalty assessments. Furthermore, the trial court's decision to not impose attorney's fees demonstrated that it had considered defendant's ability to pay in light of defendant's total financial obligation. Thus, the record shows that the court properly considered relevant factors, such as defendant's work history and medical condition, prior to imposing the drug program fee and penalties. Moreover, based on defendant's social, work, and medical history, there was substantial evidence supporting a finding that he had the ability to pay the drug program fee and penalties.

### C. Booking Fee

Defendant contends that the trial court erred in imposing a $129.75 booking fee under Government Code sections 29550, subdivision (a) and 29550.1. First, defendant argues that this court should interpret these statutes as containing an implied ability to pay requirement because corresponding provisions of the statutory scheme require findings of an ability to pay. He contends that these statutes must be interpreted as requiring an ability to pay finding to avoid equal protection problems. Second, although defendant acknowledges that the court indicated he had the ability to pay the booking fee, he once again argues that the court failed to consider his limited work history and his medical condition. Defendant contends that there was no substantial evidence supporting an ability to pay finding.

#### 1. Legal Background

Government Code sections 29550, 29550.1, and 29550.2 authorize the imposition of a fee on an arrestee who is ultimately convicted in order to cover the expenses involved in booking or otherwise processing the arrestee in a county jail. "To some degree, they vary based on the identity of the arresting agency. Arrests made by a 'city, special district, school district, community college district, college, university or other local arresting agency' are governed by Government Code sections 29550,

10

subdivision (a)(1) and 29550.1.  Arrests made by a county are governed by Government Code section 29550, subdivision (c) and those made by 'any governmental entity not specified in Section 29550 or 29550.1' are governed by Government Code section 29550.2, subdivision (a)." (*People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1399, fn. 6 (*Pacheco*), disapproved on another ground in *People v. McCullough* (2013) 56 Cal.4th 589, 599 (*McCullough*).)  Government Code sections 29550 and 29550.2 include provisions expressly requiring a finding that the person has the ability to pay the fee (*id.,* §§ 29550, subd. (d)(2), 29550.2, subd. (a)), whereas Government Code section 29550.1 does not contain such an express requirement.  The applicability of these sections depends on which governmental entity arrested the defendant.  (*McCullough*, *supra*, at p. 592; *Pacheco*, *supra*, at p. 1399, fn. 6.)

### 2.  Analysis

Defendant was arrested by the San Jose Police Department, and therefore Government Code sections 29550, subdivision (a)(1) and 29550.1 apply in this case.  Under Government Code section, 29550.1, the court was not required to make an ability to pay finding in this case.

However, assuming that the trial court was required to make an ability to pay finding based on principles of equal protection, it expressly did so here.  Moreover, that finding was supported by substantial evidence.  As discussed, the probation report included work history information, namely, defendant's previous employment as a driver for two years.  Additionally, defendant will also be able to earn prison wages, in spite of his medical condition.  As we mentioned above, the court was apprised of defendant's medical history and was able to observe him in court.  (See *Staley*, *supra*, 10 Cal.App.4th at p. 786.)  And thus, the court was in the best position of evaluating whether defendant was able to work and earn wages in prison.  (*Ibid.*)

11

## D. Penalty Assessments

Lastly, defendant contends that the $450 penalty assessments on the drug program fee and the $150 penalty assessments on the laboratory fee were incorrectly calculated. He claims that they should have been $420 and $140 respectively. Specifically, as to the drug program fee, he argues that the $45 state-only penalty to finance Department of Justice forensic laboratories (Gov. Code § 76104.7) should have been $15. As to the laboratory fee, he argues that the $15 penalty pursuant to Government Code section 76104.7 should have been $5.

The Attorney General agrees that the penalty assessments were incorrectly calculated, but claims that the penalty assessments on the drug program fee and the laboratory fee should have been $427.50 and $142.50 respectively. The Attorney General suggests that the point of discrepancy appears to be the 50 percent state courthouse construction penalty imposed pursuant to Government Code section 70372.

In *People v. Voit* (2011) 200 Cal.App.4th 1353 (*Voit*), this court noted that "there are seven assessments, surcharges, and penalties parasitic to an underlying fine." (*Id.* at p. 1374.) This court identified them as follows: "(1) a 100 percent state penalty assessment (§ 1464, subd. (a)(1)), (2) a 20 percent state surcharge (§ 1465.7), (3) a 30 percent state courthouse construction penalty (Gov. Code, § 70372), (4) a 70 percent additional penalty (Gov. Code, § 76000, subd. (a)(1)), (5) a 20 percent additional penalty if authorized by the county board of supervisors for emergency medical services (Gov. Code, § 76000.5, subd. (a)(1)), (6) a 10 percent additional penalty ' "[F]or the purpose of implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act" ' (Gov. Code, § 76104.6, subd. (a)(1)), and (7) a 10 percent additional state-only penalty to finance Department of Justice forensic laboratories (Gov. Code, § 76104.7). [Citation.]" (*Voit, supra,* at pp. 1373-1374, fn. omitted; see also *People v. Sharret* (2011) 191 Cal.App.4th 859, 863-864.)

12

The state-only penalty to finance Department of Justice forensic laboratories (Gov. Code, § 76104.7) was increased from 10 percent to 30 percent prior to defendant's July 13, 2010 and October 21, 2010 offenses. (See Stats. 2009-2010, 8th Ex. Sess., ch. 3, § 1, eff. June 10, 2010.) Thus, contrary to defendant's assertion, the penalty imposed pursuant to Government Code section 76104.7 was properly calculated at $45 and $15 for the drug program fee and laboratory fee respectively.

Nevertheless, as the Attorney General points out, the state courthouse construction penalty appears to be at issue here. As this court noted in *Voit, supra,* 200 Cal.App.4th at p. 1374, "[i]dentifying the amount of the courthouse construction penalty is not as straightforward as the others."

At the time defendant committed his crimes, Government Code section 70372 provided: "Except as otherwise provided in subdivision (b) of Section 70375," the state court construction penalty was 50 percent (former Gov. Code, § 70372, subd. (a)(1); Stats. 2009-2010, 2nd Ex. Sess., ch. 10, § 5, eff. May 21, 2009; Stats. 2010, ch. 720, § 16, eff. Oct. 19, 2010), but it was subject to reduction by a county "as provided in subdivision (b) of Section 70375." (Former Gov. Code, § 70372, subd. (a)(2); Stats. 2009-2010, 2nd Ex. Sess., ch. 10, § 5; Stats. 2010, ch. 720, § 16, eff. Oct. 19, 2010.)

In *People McCoy* (2007) 156 Cal.App.4th 1246 (*McCoy*), the appellate court explained that for a period of time Government Code section 70375, subdivision (b) authorized two potential reductions in the 50 percent state court construction penalty, one in the amount collected for deposit into a local courthouse construction fund pursuant to Government Code section 76100, and the other in the amount collected for the "Transitional State Court Facilities Construction Fund" to the extent it is funded by the local courthouse construction fund. (*McCoy, supra,* at pp. 1252-1253; Stats. 2002, ch. 1082, § 4; Stats. 2003, ch. 592, § 18.) By reference to a chart included in Government Code section 76000, subdivision (e) that reflected the amounts various counties were collecting for local courthouse construction, *McCoy* concluded that Los

13

Angeles County had, by virtue of its local courthouse collections, effectively reduced the 50 percent maximum to a 30 percent penalty assessment for state courthouse construction. (*McCoy, supra,* at p. 1254.)

Following the reasoning of *McCoy,* we note that the versions of Government Code section 76000, subdivision (e) applicable on July 13, 2010 and October 21, 2010, when defendant committed his crimes, indicate that Santa Clara County was collecting $1.50 from the $7 penalty in Government Code section 76000 for local courthouse construction. (Current and former Gov. Code, § 76000; Stats. 2008, ch. 218 § 5.) In other words, the state court construction fee of $5 per $10 fine was reduced to $3.50, or 35 percent, at that time. Following *People v. High* (2004) 119 Cal.App.4th 1192, in which the court concluded that punitive fund raising measures cannot be applied retroactively (*id.* at pp. 1197-1199), we apply the statutes (Gov. Code, §§ 70372, 70375, 76000) in effect at the time of defendant's crimes in order to avoid an ex post facto expansion of defendant's punishment by later statutory amendments. Applying these principles, the state courthouse construction penalty for the drug program fee and the laboratory fee were $52.50 and $17.50 respectively.

According to our calculation, the total amount of penalty assessments applicable to defendant's drug program fee and laboratory fee are $427.50 and $142.50 respectively (a 100 percent penalty under section 1464, subdivision (a), a 20 percent penalty under section 1465.7, a 35 percent penalty under Government Code section 70372, a 70 percent penalty under Government Code section 76000, subdivision (a)(1), a 20 percent penalty under Government Code section 76000.5 subdivision (a)(1), a 10 percent penalty under Government Code section 76104.6 subdivision (a)(1), and a 30 percent penalty under former Government Code section 76104.7).

## DISPOSITION

The judgment is modified to reflect the following fees and penalty assessments: (1) $150 in drug program fees, plus $427.50 in penalty assessments; and (2) $50 in laboratory fees, plus $142.50 in penalty assessments.  As modified, the judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MIHARA, J.

_____
GROVER, J.

15